IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BILL SHIPP,<br><br>        Plaintiff,<br><br>v.<br><br>INTERNATIONAL AUTO GROUP OF SOUTH FLORIDA, INC., STUART SIEGLE, ARTHER SIEGLE, AND JASON OECHSLE,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 2:16-CV-24 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Motion for Transfer of Venue. For the reasons outlined below, the Court will grant Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

## I. BACKGROUND

Plaintiff Bill Shipp is a Utah resident who has an interest in collectible automobiles. Defendant International Auto Group of South Florida ("IAG") is a Florida corporation that sells collectible automobiles. IAG was organized under the laws of Florida with its principal place of business in Broward County, Florida. Defendants Stuart Siegle ("S. Siegle"), Arthur Siegle ("A. Siegle"), and Jason Oechsle ("Oechsle") are principals and/or employees of IAG and are residents of the State of Florida. Defendants have not done business nor are licensed to do business in Utah.

The following facts are relevant to Defendants' Motion to Dismiss and are taken from Plaintiff's Response to Defendants' Motion to Dismiss unless otherwise noted.

Plaintiff discovered Defendant IAG and reached out to IAG to find out if a 308 Ferrari was for sale. Defendant S. Siegle told Plaintiff that there was such a car for sale, and through the course of dealing with Defendants, Plaintiff became interested in purchasing two additional cars. During this time, Plaintiff and Defendants communicated via email and telephone. Defendants sent Plaintiff a Retail Order for Motor Vehicle form ("Retail Order") for the purchase of the three cars, which Plaintiff signed. The parties dispute whether Plaintiff was given the opportunity to inspect the cars prior to purchase, but it is undisputed that he did not. The cars were promised to be in perfect condition with documented low mileage. However, upon receiving the first car shipped by Defendants to Utah, Plaintiff was informed by automotive detail shops that the car did not match the promised condition. Additionally, the mileage on the car was exempt from reporting, providing no way for Plaintiff to verify Defendants' claims of the vehicle's low mileage.

Up to this point, Plaintiff had already paid $250,000 of the total $348,000 for the three cars, but desired to cancel the Retail Order contract because of the actual condition of the car. Defendants did not wish to cancel the Retail Order contract and were in the process of repairing problems with one of the remaining two vehicles still in their possession, intending to send the cars as soon as they were repaired and the remainder of the balance owed on the cars was paid by Plaintiff. The Retail Order contract has not been cancelled. Plaintiff continues to owe Defendants the remainder of $98,000 for the vehicles ordered and Defendants have possession of the remaining two vehicles.

Plaintiff brings various claims and argues that exercising jurisdiction over Defendants is proper.

## II. PERSONAL JURISDICTION STANDARD

Establishing personal jurisdiction is the Plaintiff's burden, and all factual disputes are resolved in Plaintiff's favor.[1] "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."[2]

In order to obtain personal jurisdiction over a non-resident defendant, a plaintiff must show that jurisdiction is proper under the laws of the forum State and that the exercise of jurisdiction would not offend due process.[3] Utah law provides for jurisdiction to be exercised to the fullest extent of due process clause.[4] Therefore, "[i]t is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[5]

For due process to be satisfied, Plaintiff must show that Defendants had sufficient minimum contacts with the forum state, such that if the state exercised personal jurisdiction it would not "'offend traditional notions of fair play and substantial justice.'"[6] Minimum contacts may be established by a showing of either general jurisdiction or specific jurisdiction which, if either is found, will satisfy the minimum contacts requirement.[7]

---

[1] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[2] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008).

[3] *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[4] Utah Code Ann. §78B-3-201(3) (West 2015).

[5] *Sys. Designs, Inc. v. New Customware Co., Inc.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[6] *Shrader*, 633 F.3d at 1239, (quoting *Dudnikov v. Chalk & Vermillion Fine Arts. Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).

[7] *Id.*

General jurisdiction exists when the plaintiff can show that the defendant has continuous and systematic interactions with the forum state and that jurisdiction can be exercised by courts even if the claim is not specifically related to the contacts that the defendant has with the forum state.[8] Factors that courts may consider when determining if there is general jurisdiction over the defendant corporation include:

> (1) whether the corporation solicits business in the state though a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.[9]

In order for a court to have specific personal jurisdiction, the "out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state," and the "plaintiff's injuries must 'arise out of' defendant's forum-related activities."[10] Purposeful activities can be determined in one of two ways: purposeful direction or purposeful availment. Purposeful availment analysis is usually applied in contractual disputes where the defendant has sought to avail itself of the protection of the forum State's laws, while purposeful direction analysis is applied in tortious claim disputes.[11] While the distinction between the two can be helpful, "the shared aim of 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."[12]

---

[8] *Id.*

[9] *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

[10] *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v Rudzewicz*, 471 U.S. 462, 472 (1985)).

[11] *Id.*

[12] *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475).

If a defendant is found to have had minimum contacts with the state of Utah, the Court must also determine whether the assertion of specific personal jurisdiction would comport with traditional notions of fair play and substantial justice.[13] Factors that the Court may consider include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental social policies."[14] The defendant has the burden to prove that it would be unreasonable for a court to exercise personal jurisdiction.[15]

## III. DISCUSSION

A.     MOTION TO DISMISS

Plaintiff claims that this Court has authority to exercise jurisdiction over the Defendants. Defendants contend, however, that neither IAG nor the employees/principals of IAG had sufficient contacts to support jurisdiction.

### 1. *General Jurisdiction*

"General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim be related to those contacts."[16] Plaintiff does not claim that Defendants had sufficient contacts with Utah to allow for general jurisdiction. Even if Plaintiff had, the Court finds there are not sufficient facts to establish continuous and systematic contacts with Utah to justify general jurisdiction over Defendants.

---

[13] *Id.* at 1080.

[14] *Burger King*, 471 U.S. at 477 (quotation marks omitted).

[15] *Shrader*, 633 F.3d at 1240.

[16] *Id.* (quoting *Dudnikov*, 514 F.3d at 1078).

### 2. Specific Jurisdiction

This Court can exercise specific jurisdiction over Defendants if their actions were purposefully directed towards the residents of the forum State and if Plaintiff's injuries arose out of those directed activities.[17] Purposeful direction can be shown by proving three factors: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state."[18]

Additionally, the relationship between defendant and plaintiff "must arise out of the contacts that the '*defendant himself*' creates with the forum State."[19] The unilateral action of someone who claims a relationship with a defendant is not sufficient to establish minimum contacts with the State, rather "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[20] "[T]he plaintiff cannot be the only link between the defendant and the forum."[21]

Plaintiff contends that Defendants' misrepresentations were intentional actions specifically directed at him with the intent to cause him harm. Plaintiff also contends that Defendants directed their activity at the forum State through aiming tortious conduct towards Utah. Plaintiff states that Utah has an interest in protecting its citizens from fraud and that

---

[17] *Dudnikov*, 514 F.3d at 1071.

[18] *Id.* at 1072.

[19] *Walden v. Fiore*, --- U.S. ---, 134 S.Ct. 1115, 1122 (2014) (quoting *Burger King Corp.*, 471 U.S. at 475).

[20] *Hanson v. Denkla*, 357 U.S. 235, 253 (1958).

[21] *Walden*, 134 S.Ct. at 1122.

Plaintiff has financial ties to Utah, and thus this Court should have jurisdiction over Defendants.[22]

Plaintiff mistakenly places weight on the relationship and contact between Plaintiff and Defendants, instead of Defendants' contacts with the forum state. The Supreme Court has explained that actions directed at a resident, rather than the forum State, do not constitute sufficient grounds for the forum State to exercise jurisdiction over nonresident defendants.[23] "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."[24] Further, "plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state."[25] "'[T]he forum state itself must be the focal point of the tort.'"[26]

In the present case, while Defendants allegedly engaged in fraudulent behavior, the alleged actions were only directed toward Plaintiff, and not expressly at Utah. The fact that Defendants knew that Plaintiff was a Utah resident is not enough to establish personal jurisdiction. Plaintiff's residence in Utah is the type of random or fortuitous contact that is not sufficient to establish jurisdiction. While Plaintiff claims that Defendants were aware that their

---

[22] Docket No. 21, at 21.

[23] *Walden*, 134 U.S. at 1122.

[24] *Id.* at 1123 (quoting *Burger King Corp.*, 471 U.S. at 475).

[25] *Id.* at 1245. *See also Trujillo v. Williams*, 465 F.3d 1210, 1219 (10th Cir. 2006) (quoting *Burger King*, 471 U.S. at 474 ("The constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the *forum*.")(emphasis added)).

[26] *Id.* at 1244 (quoting *Dudnikov*, 514 F.3d at 1074 n. 9).

actions would cause injury to a Utah resident, this is only because Plaintiff is a Utah resident. If the Court were to allow personal jurisdiction here, it would allow a defendant to be haled into court when a single customer living in that state purchased a product from that defendant, regardless of the contacts made.

In addition, "[s]pecific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."[27] However, Defendants did not expressly direct activities or intend to avail themselves of the protection of Utah law, as evidenced by the forum selection/choice of law clause in the Retail Order contract.[28] The forum selection/choice of law provision makes clear that Defendants intended that Florida law govern the Retail Order contract and that Florida courts hear any disputes. Defendants did not express or act in a way to show a desire to benefit or be protected by Utah law, thus not satisfying the purposeful direction requirement for minimum contacts.

Additionally, Plaintiff claims that the Court has jurisdiction to hear its complaints based on the allegation that Defendants' conduct in engaging in business transactions with Plaintiff has been sufficient to establish that jurisdiction. Defendants' contacts with Plaintiff in this regard are minimal. Further, Defendants' and Plaintiff's business dealings arose from the initial action of Plaintiff contacting the Defendants about the vehicle.[29] Plaintiff states that it makes no difference that he contacted the Defendants first.[30] However, this fact does make a difference because, as

---

[27] *Dudnikov*, 514 F.3d at 1078.

[28] Docket No. 20, at 1.

[29] Docket No. 20, at 1; Docket No. 21, at 2.

[30] Docket No. 21, at 19.

stated by the Supreme Court of the United States, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State"[31] and cannot be "based on the 'random, fortuitous, or attenuated' contacts" made by Plaintiff reaching out to Defendants.[32]

Plaintiff also contends that, because he also has financial ties to Utah and suffered financial losses in Utah, this Court has jurisdiction.[33] But again, specific jurisdiction arises from Defendants' contacts with the forum State, not with the resident who feels the effects in the forum State. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State."[34]

### 3. Fair Play & Substantial Justice

Even if there were sufficient contacts to allow the exercise of personal jurisdiction over Defendants, exercising jurisdiction in this case would not comport with traditional notions of fair play and substantial justice. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."[35]

---

[31] *Walden*, 134 S.Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475).

[32] *Id.* at 1123.

[33] Docket No. 21, at 21.

[34] *Walden*, 134 S.Ct. at 1122.

[35] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004) (quotation marks omitted).

### a. Burden on Defendants of Litigating in the Forum

"The burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction."[36] "This factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous."[37]

In this case, the burden on Defendants to litigate in a Utah court would be significant as Defendants' do not have licenses to conduct business in Utah, do not employ agents in Utah, nor have offices in Utah. Further, requiring them to travel across the country to litigate in Utah would be a burden on Defendants because Defendants specifically contracted for disputes to be heard in their forum state of Florida.

### b. Forum State's Interest in Adjudicating the Dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors. . . . The state's interest is also implicated where the resolution of the dispute requires a general application of the forum state's law."[38]

Utah certainly has an interest in providing Plaintiff a forum for redress. However, this case does not require a general application of Utah law. Plaintiff and Defendants explicitly contracted for any litigation or disputes to be resolved outside of Utah under Florida law. Thus, while Utah has an interest in providing Plaintiff a forum, this interest is lessened in light of the parties' contract.

---

[36] *Id.* at 1079 (quotation marks omitted).

[37] *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1096 (10th Cir. 1998).

[38] *Id.*

### c. Plaintiff's Interest in Convenient and Effective Relief

This next factor questions whether Plaintiff can "receive convenient and effective relief in another forum."[39] This factor can "weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."[40]

Plaintiff contends that it would be a burden to travel to Florida to litigate the case. However, with current modes of travel, this burden is not such that it would "practically foreclose the pursuit of the lawsuit."[41] The cost of Plaintiff travelling to Florida would likely be less than haling Defendants to Utah. It may even be advantageous to litigate in Florida as that is the location of much of the evidence and many of the witnesses.

### d. Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor "examines whether the forum state is the most efficient place to litigate the dispute."[42] "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[43]

As stated previously, the location of a majority of the witnesses in this case are in Florida. Additionally, the Retail Order contract provided that all disputes would be resolved under

---

[39] *Benton*, 375 F.3d at 1079 (quotation marks omitted).

[40] *Id.* (quotation marks omitted).

[41] *Id.* (quotation marks omitted).

[42] *OMI*, 149 F.3d at 1097.

[43] *Id.* (citations omitted).

Florida law. Finally, as all Defendants are residents of Florida and there are no separate causes of action aside from the main claims, there would not be a risk of piecemeal litigation. Therefore, litigating in Utah would be less efficient than in Florida.

    *e. State's Interest in Furthering Fundamental Substantive Social Policies*

The final factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states. . . ."[44] If the Court were to exercise jurisdiction over Defendants, it would essentially defeat the purpose of contracting and the contractual parameters set by parties. This would be a hindrance, rather than a furtherance, of a substantive social policy.

 B. MOTION TO TRANSFER VENUE

As this Court does not have person jurisdiction to hear Plaintiff's claims, the Court will not address Defendant's Alternative Motion to Transfer Venue.

## IV. CONCLUSION

 It is therefore

 ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Motion for Transfer of Venue (Docket No. 20) is GRANTED IN PART as set forth above. The Clerk of the Court is directed to close this case forthwith.

---

[44] *Benton*, 375 F.3d at 1085 (quotation marks omitted).

DATED this 20th day of July, 2016.

BY THE COURT:

Ted Stewart
United States District Judge